IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| NANCY ROMEO *ex rel.* UNITED STATES OF AMERICA, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. |
| SOUTHERNCARE, INC., a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Alabama, ) ) ) | **FILED UNDER SEAL** |
| ) | **JURY DEMAND** |
| Defendant. ) | |

## *QUI TAM* COMPLAINT

COME NOW Plaintiffs Nancy Romeo ("Romeo") *ex. rel.* the United States of America ("United States"), and for their claims against Defendant, allege and state as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction exists pursuant to 31 U.S.C. ¶¶ 3730(b)(1) and 3732, because this action seeks remedies on behalf of the United States for violations of 31 U.S.C. ¶ 3729 *et seq.* by Defendant SouthernCare, Inc. ("SouthernCare" or "Defendant") and Defendant can be found and transacts business in this District. Venue exists in this District pursuant to 31 U.S.C. ¶¶ 3730(b)(1) and 3732, because SouthernCare is qualified to do business in the State of Alabama, conducts

substantial business in the State of Alabama, and transacts substantial business in this District.

## DEFENDANT

2.     SouthernCare is a corporation organized pursuant to the laws of the State of Delaware with its principal place of business in Birmingham, Alabama. SouthernCare is engaged in the business of, *inter alia*, providing hospice services to patients who reside in private homes, group homes, assisted living facilities and skilled nursing facilities.  SouthernCare is one of the nations' largest hospice providers.  A privately owned company, SouthernCare has over ninety offices in thirteen states and provides care to over 5,500 patients each day for which it submits reimbursement claims to Medicare and/or Medicaid on a per diem basis.

## PLAINTIFF

3.     Plaintiff/Relator brings this suit on behalf of the United States pursuant to 31 U.S.C. § 3730.   Relator is a registered nurse and is employed at SouthernCare as a Regional Clinical Coordinator.  Her primary responsibility at SouthernCare auditing patient health charts. Through her audits of SouthernCare's patient charts she has discovered numerous cases where SouthernCare has fraudulently admitted patients to Hospice who do not qualify for the program and fraudulently re-certified patients who do not qualify for Hospice Case.  Relator has personally reviewed numerous patient documents that have been altered to reflect

that patients qualify for Hospice when, in fact, they do not and/or patient certification and recertification papers that are in direct odds with the patient's diagnosis from his or her physician's diagnosis. Relator has discovered so many instances of fraud as to believe that SouthernCare's false certifications and fraudulent billing of the United States for Hospice care to unqualified patients is a widespread, systematic practice that is endemic to SouthernCare. Relator is the original source of the information that is the subject of this Complaint.

### The Medicare Hospice Benefit in General

4. The Medicare hospice benefit ("Hospice") covers a broad set of palliative services for qualified beneficiaries who have a life expectancy of six months or less, as determined by their physician. Hospice is designed to provide pain relief, comfort, and emotional and spiritual support to patients with a terminal diagnosis. Qualified Hospice patients may receive skilled nursing services, pain medication, physical and occupational therapy, counseling, home health aide and homemaker services, short-term inpatient care, inpatient respite care, and other services for the palliation and management of the terminal illness. Qualified beneficiaries who elect Hospice agree to forego curative treatment for their terminal condition.

5. Through Medicare and/or Medicaid, the United States reimburses Hospice providers for services provided to qualified beneficiaries on a per diem

rate for each day a qualified beneficiary is enrolled. Medicare and/or Medicaid makes a daily payment, regardless of the amount of services provided on a given day and even on days when no services are provided. The daily payment rates[1] are intended to cover costs that Hospice providers incur in furnishing services identified in patients' care plans for patients who have been determined by their physicians to be suffering a terminal illness.

## SOUTHERCARE'S FRAUDULENT SCHEME OF BILLING FOR UNQUALIFIED PATIENTS

6. Over at least five years, SouthernCare has defrauded the United States through a systematic pattern and practice of specifically targeting and enrolling non-terminal patients and marketing Hospice services to non-terminal patients and fraudulently billing Medicare and/or Medicaid for Hospice services to such non-terminal patients who do not qualify for Hospice benefits. For example, SouthernCare routinely enrolls and bills Medicare and/or Medicaid for Hospice cancer patients who are simultaneously undergoing aggressive chemotherapy treatments and other patients who are engaged in curative treatment.

---

[1] Payments are made according to a fee schedule that has four base payment amounts for the four different categories of care: routine home care (RHC), continuous home care (CHC), inpatient respite care (IRC), and general impatient care (GIC). The four categories are distinguished by the location and intensity of the services provided and the base payments for each category reflect variation in expected input cost differences. Unless a hospice provides CHC, IRC, or GIC on any given day it is paid at the RHC rate. For any given patient, the type of care can vary throughout the hospice stay as the patient's needs change.

4

7. SouthernCare's fraudulent scheme is implemented through its aggressive marketing plan. SouthernCare markets its Hospice services directly to potential patients, their families, physicians and other healthcare providers through registered nurses and community relation directors and who work within SouthernCare's marketing department as "Admission Coordinators." SouthernCare's Admission Coordinators are required to meet a quota of twenty-one admitted patients per month. During a SouthernCare conference in Huntsville, Alabama, from November 27, 2007, to November 29, 2007, SouthernCare's Marketing Administrator, Mr. Steven Fredrick, warned the Admission Coordinators that if they did not admit a minimum of twenty-one patients per month, then their jobs were in serious jeopardy. He further specifically instructed the Admission Coordinators that their duty was to get the patient in – and that SouthernCare's clinical team would "make it work." Essentially, the message to SouthernCare's on the ground marketing team, made up mostly of registered nurses, is to seek any client no matter whether they qualify as terminally ill or not – and that failure to make this quota could result in termination.

8. Likewise, SouthernCare instructs its clinical staff to qualify and enroll patients referred by the marketing team even if they do not qualify for Hospice. At the same November 2007 conference, another SouthernCare management person, Tonya Dickson, instructed the clinical staff, also primarily consisting of registered

5

nurses and clinical directors, that all patients referred by the marketing department should be enrolled in and certified for a minimum of sixty or ninety days even if they do not qualify for Hospice before they are discharged from SouthernCare. According to Mr. Fredrick, SouthernCare has "one goal" in mind and that is to "beat the surveyors." The unmistakable message to its staff is that SouthernCare enrolls and bills for anyone, regardless of whether they qualify, as long as they can keep it hidden.

9. SouthernCare aggressively markets its services to patients who are not terminally ill with the promise of free medications, including oxygen, diabetes supplies, and other supplies such as nutritional supplements, adult diapers, durable medical equipment, such as walkers, wheelchairs, hospital beds, bedside tables etc. – all fraudulently paid for by Medicare. Additionally, SouthernCare promises to furnish patients with a home health aide to assist with bathing, dressing, grooming, nail care, light housekeeping including meal preparation – essentially "whatever it takes" to entice patients to enroll or stay enrolled in SouthernCare.

10. A large majority of SouthernCare's patients, for whom it bills Medicare and/or Medicaid, remain enrolled for years at a time or are dismissed from and re-enrolled numerous times such that their aggregate enrollment amounts to multiple years. Many of those patients never qualified during the term of their enrollment in Hospice. Additionally, many of the patients enrolled in Hospice by

SouthernCare do not even have a recognizable terminal illness and are simply certified on the amorphous basis of "failure to thrive," or "general debility" with scant or minimal documentation of a diagnosable, much less, terminal illness. Many of SouthernCare's patients are elderly, who might require some type of elder care assistance but who do not have a terminal illness and do not qualify for Hospice care.

11.     For instance, SouthernCare admitted a patient on July 25, 2002 as being terminally ill with congestive heart failure.  The patient has been enrolled with SouthernCare for over five years, but, as of December 2007, the patient's chart still showed no signs that the patient is terminally ill.  To the contrary, the nurse's notes in the patient's chart indicate that the patient has almost unlimited ambulation and walks around his yard.  He is described as being independent in most all of activities of daily living.  He complains of some chest pain three to four times per week, which is relieved with sublimingual nitroglycerin.  All vital signs appear stable and there is nothing in the patient's chart to support a finding of terminal illness even after more than five years of Hospice care.  Without any justification, SouthernCare continues to recertify the patient.

12.     On February 28, 2007, another patient was fraudulently admitted to SouthernCare.  According to the patient's chart she was enrolled in Hospice for "Failure to Thrive."  However, the notes in her chart indicate that she is not dying.

To the contrary, the chart indicates that the patient is in amazing health for her age (89 years). She lives alone and performs her own cooking. Her only medications include Tylenol, Evista, a caltrate supplement, and vitamins. She does not require a home health aide to assist her at home. She ambulates with a cane and can walk twenty-five to thirty feet at a time with only occasional shortness of breath. According to the admission notes in her chart she has arthritis, osteoporosis, right inguinal hernia, and a history of anemia, none of which are terminal illnesses or would justify Hospice Care. Despite her apparent good health, the initial certification for Hospice and recertification state that the patient needs close to extensive nursing, social, and chaplain services. The certification also falsely states that the patient has had no improvement with nutritional support and that she is frail with cachexia; however, her chart indicates that while she lost eight pounds over the course of the year prior to enrollment, she actually *gained* four pounds in little more than her first three months of enrollment.

  13. On September 11, 2007, SouthernCare fraudulently admitted a patient for "general debility." The patient lives with her daughter and attends adult day care daily. SouthernCare's marketing personnel noted on September 11, 2007 that the patient's weight was 142 pounds, seemingly down from 175 pounds in April of 2007. The patient was apparently admitted primarily due to this reported weight loss. However, the marketing personnel's notes appear to have fraudulently

overstated the patient's weight loss, because notation on the patient's file by a different nurse not involved in SouthernCare's marketing department recorded the patient's weight at 163 pounds on September 26, 2007, which would reflect an almost impossible weight gain of twenty-one pounds in just fifteen days. The patient's chart also notes several other discrepancy's between the marketing assessment and the assessment of clinical nurses.

14.     Other patients also show such discrepancies between the marketing assessment and the assessments of the clinical nurses.  For instance, marketing assessment notes for a patient enrolled in Hospice with SouthernCare on August 31, 2007, shows chest pain and coronary heart disease as the reason for admission to Hospice, yet all of the clinical nurses' notes show no chest pain and the patient specifically denies having chest pains. The clinical nurses' notes also show that the patient has a stable, well-controlled blood pressure, heart rate, and vital signs. By all indications the patient is responding well to his heart medications.  He is independent in all activities of daily living.  Nevertheless, without any justification, SouthernCare enrolled him in Hospice with no indication from his physician that he is terminally ill.

15.     Likewise, SouthernCare admitted a patient on August 23, 2007 and the marketing nurse's notes stated that the patient was taking heart medication and a diuretic.  The marketing nurse noted that the patient had peripheral edema,

fatigue and shortness of breath while at rest. The patient is independent in all activities of daily living and seems to be living for the most part pain free. Nothing on the patient's chart indicates a terminal illness, yet SouthernCare re-certified the patient for an additional ninety days.

16. Many of SouthernCare's Hospice patients continue to undergo curative treatment while in Hospice care. For instance, SouthernCare admitted a patient November 20, 2001 who underwent a successful coronary by-pass surgery and pacemaker insertion immediately prior to enrollment in Hospice. This elderly patient resided in an assisted living facility while she was enrolled with SouthernCare Hospice. Her doctor noted that she was alert and oriented and did not identify any significant problems with her throughout her approximately four years of Hospice. SouthernCare finally discharged her on October 28, 2005, for a failure to decline, after more than four years of fraudulently billing Medicare for this unqualified patient. The final narrative nursing entry stated that patient apologized for not dying.

17. Similarly, SouthernCare enrolled a patient on March 20, 2002 for congestive heart failure but was forced to discharge her a year and a half later because the patient was undergoing and responding to aggressive treatment. Nevertheless, SouthernCare quickly re-enrolled her just over two months later despite her aggressive treatment. Finally, in the fall on October 23, 2005,

SouthernCare discharged the patient for failure to decline and because she was continuing to undergo aggressive curative treatment. SouthernCare billed Medicare for this patient off and on during a three year period even though she was undergoing aggressive treatment, was not terminally ill, and did not qualify for Hospice care.

      18.   On November 19, 2007, SouthernCare enrolled a patient with end stage renal disease for which he gets a separate Medicare benefit and which causes him to receive dialysis three times per week.  Nothing in the patient's chart would qualify him for Hospice care.  SouthernCare's certification states that the patient has shortness of breath with minimal exertion.  However, the patient is extremely active.  He drives himself to and from his dialysis three time a week and when he is not in dialysis, he is frequently out visiting friends.  He is so active that SouthernCare's clinical nurses have had a difficult time tracking him down.  The nurses' notes indicate multiple phone calls and visits to the patient's home without any success in reaching him.  According to the nurse's notes, the patient's wife instructed that the patient usually visits friends after dialysis and that the wife is not sure when he will return home.  Nevertheless, without any justification, SouthernCare certified the patient as terminally ill with six months or less to live and bills Medicare daily for Hospice.

19. The foregoing examples are just a sampling of the many unqualified patients fraudulently enrolled in Hospice by SouthernCare for whom SouthernCare fraudulently submits false claims to the United States through Medicare and/or Medicaid. As discussed, *supra*, the Hospice benefit was intended to provide palliative care to patients who have been diagnosed with six months or less to live. However, SouthernCare routinely enrolls such unqualified patients, with no diagnosis or documentation of terminal illness, and keeps them enrolled for as long as four, five, or six years.

## COUNT ONE
## FALSE CLAIM UNDER 31 U.S.C. § 3729

20. Plaintiff adopts and incorporates by reference paragraphs 1 through 18 as though fully set forth herein.

21. SouthernCare knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval: to wit, SouthernCare knowingly enrolled and/or re-enrolled Hospice patients whom they knew were unqualified for Medicare and/or Medicaid reimbursement and presented or caused to be presented false claims to the United States through Medicare and/or Medicaid for payment of same.

22. SouthernCare's fraudulent actions, as described *supra*, are part of a company-wide, systematic pattern and practice of knowingly submitting or causing to be submitted false claims to the United States through fraudulent certification

and re-certification of Hospice patients and fraudulent billing of the United States through Medicare and/or Medicaid.

23.    By and through the actions described herein, SouthernCare knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States through Medicare and/or Medicaid.

24.    By and through the actions described herein, SouthernCare knowingly made, used, or caused to be made or used, false certifications regarding past, present, or future compliance with a prerequisite for payment or reimbursement by the United States through Medicare and/or Medicaid.

25.    SouthernCare's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to SouthernCare by the United States through Medicare and/or Medicaid for such false or fraudulent claims.

WHEREFORE, Relator requests entry of judgment in its favor on behalf of the United States, and against SouthernCare, in an amount equal to triple the damages sustained by reason of SouthernCare's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

## COUNT TWO
## CONSPIRACY UNDER 31 U.S.C. § 3729(a)(3)

26. Plaintiff adopts and incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

27. SouthernCare knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval: to wit, SouthernCare knowingly enrolled and/or re-enrolled Hospice patients whom they knew were unqualified for Medicare and/or Medicaid reimbursement and presented or caused to be presented false claims to the United States through Medicare and/or Medicaid for payment of same.

28. The Government paid SouthernCare for such false claims.

29. SouthernCare in concert with its principals, agents, and employees did agree to submit such false claims to the United States.

30. SouthernCare and/or its principals, agents, and employees did act, by and through the conduct described herein, in furtherance of the agreement to submit false claims to the United States.

31. SouthernCare and its principals, agents, and employees acted with the intent to defraud the United States by submitting false claims for payment or reimbursement through Medicare and/or Medicaid.

32. SouthernCare's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to

SouthernCare by the United States through Medicare and/or Medicaid for such false or fraudulent claims.

WHEREFORE, Relator requests entry of judgment in its favor on behalf of the United States, and against SouthernCare, in an amount equal to triple the damages sustained by reason of SouthernCare's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

## COUNT THREE
## FRAUD, SUPPRESSION, AND DECEIT

33.  Plaintiff adopts and incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

34.  SouthernCare misrepresented or suppressed the material fact that a substantial number of its patients enrolled in Hospice do not qualify for Hospice and are not terminally ill.

35.  SouthernCare was under an obligation to communicate to the United States that it had enrolled patients to Hospice and that it had billed the United for services to patients who do not qualify for Hospice and who are not terminally ill.

36.  Such misrepresentations were made willfully to deceive, or recklessly without knowledge.

B JFB 768303 v2
9600000-000006 12/26/2007

37. The United States acted on SouthernCare's material misrepresentations, as described herein, to its determent.

38. SouthernCare's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to SouthernCare by the United States through Medicare and/or Medicaid for such false or fraudulent claims.

WHEREFORE, Relator requests entry of judgment in its favor on behalf of the United States, pursuant to 31 U.S.C. § 3732 and Ala. Code §§ 6-5-101, 6-5-102, and 6-5-103, against SouthernCare, awarding compensatory and punitive damages, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

### RELATOR DEMANDS A TRIAL BY STRUCK JURY.

        s/ Henry I Frohsin
HENRY I FROHSIN
JAMES F. BARGER, JR.
Attorneys for Relator, Nancy Romeo

OF COUNSEL:
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Suite 1600
Birmingham, Alabama 35203-5202
(Telephone):  (205) 328-0480